IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**ALPHONSE WEBB**        )

    PLAINTIFF,        )

VS.        )        CV96-H-0129-S

TOGO D. WEST, JR.,        )
in his official capacity as
**SECRETARY OF THE ARMY,**        )
    DEFENDANT.

**ENTERED**

**AUG 2 5 1998**

## MEMORANDUM OF DECISION

Defendant Togo D. West, Jr., in his official capacity as Secretary of the Army, filed a motion for summary judgment on July 10, 1998 seeking judgment in his favor as to plaintiff's remaining claims. The motion for summary judgment was deemed submitted, without oral argument, for decision by this court on July 31, 1998.[1]

As a result of the court's order granting, in large part, defendant's initial motion for summary judgment, plaintiff's only remaining claims are under Title VII for racial discrimination in relation to plaintiff's termination on August 25, 1993 and retaliation arising out of complaints relating to the March 25,

---

[1] In support of the motion defendant submitted excerpts from plaintiff's deposition; declarations by Larry Pearson, Kathy Phillips and James Jenkins; an affidavit by plaintiff; various letters and other documents from the administrative proceedings below. Defendant also filed a memorandum brief in support of the motion. Plaintiff filed a response to the motion, the deposition of plaintiff with exhibits and a brief in opposition to defendant's motion for summary judgment.

1993 incident and plaintiff's eventual removal from federal service.[2]

## I. UNDISPUTED FACTUAL BACKGROUND

Plaintiff worked for the Department of the Army in the Directorate of Public Works as a carpenter at the Anniston Army Depot. Among the twenty-four employees working in the carpenter shop where plaintiff worked, plaintiff was the only black journeyman carpenter. See Plaintiff's depo. 252.

Terry Davis served as plaintiff's first level supervisor from 1990 or 1991 until plaintiff's termination in 1993. See Plaintiff's depo. 25; Exh.3 to Plaintiff's Affidavit at p.81. Davis proposed plaintiff's removal from Federal service. Id. Plaintiff's second level supervisor, James Jenkins, sustained the decision to remove plaintiff from Federal service.[3] See Jenkins Declaration ¶¶ 2-3 & Attachments 5 & 6. Plaintiff was removed from Federal service effective August 25, 1993. See Chapman Declaration, p.2, ¶ 1 (filed March 18, 1996).

---

[2] Defendant filed a motion for partial summary judgment on March 18, 1996, asserting mainly procedural grounds. The court granted defendant's motion in large part by its July 12, 1996 order and memorandum of decision, as amended on August 7, 1996. Relying on the court's Rule 54(b) certification of the July 12, 1996 order, plaintiff appealed the court's ruling to the Eleventh Circuit Court of Appeals. On September 8, 1997 the Eleventh Circuit affirmed this court's decision granting partial summary judgment in favor of defendant.

[3] As the Chief, Plant Engineering Division, Directorate of Engineering and Logistics Jenkins served as the deciding official for plaintiff's removal. See Jenkins Declaration.

## II.  LEGAL ANALYSIS

According to plaintiff, Davis referred to plaintiff as "a sorry-ass nigger" 25 times or more throughout the time he supervised plaintiff. See Plaintiff's depo. 29 & 39. For purposes of this motion, the court will assume that such racial slurs were made by Davis.[4] Defendant asserts that plaintiff's termination was due to unauthorized absence from the work site and discourtesy to his supervisor. Id. According to defendant, the undisputed evidence demonstrates that plaintiff has failed to create a material issue of fact as to whether these proffered non-discriminatory reasons for his termination and any adverse employment actions alleged to be retaliatory are untruthful.

A.  **Summary Judgment Standard**

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The

---

[4] This is a large assumption. Plaintiff filed numerous formal EEO complaints (plus meetings with EEO counselors) regarding alleged racial discrimination from March 1990 until his termination in 1993. In none of these complaints or meetings did plaintiff refer to the alleged racial slurs by Davis. Not until his June 1998 deposition (which the court had to order plaintiff to attend) did he accuse Davis of a single racial slur. The court has heretofore eliminated from this action numerous frivolous claims by plaintiff. Should a jury not believe plaintiff's recent recollection of the alleged slurs by Davis, the remaining racial claim most likely should be viewed as frivolous.

3

See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the

moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. <u>Fitzpatrick</u>, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. <u>Fitzpatrick</u>, 2 F.3d at 1115-16. If the

movant meets its initial burden by using this second method, the
non-moving party may either point out to the court record
evidence, overlooked or ignored by the movant, sufficient to
withstand a directed verdict, or the non-moving party may come
forward with additional evidence sufficient to withstand a
directed verdict motion at trial based on the alleged evidentiary
deficiency. However, when responding, the non-movant can no
longer rest on mere allegations, but must set forth evidence of
specific facts. Lewis v. Casey, 518 U.S. 343 (1996).

### B. Title VII Claim - Racial Discrimination in Removal from Federal Service

Defendant asserts a strong belief that the court should
totally disregard plaintiff's deposition testimony in relation to
the alleged racial slurs by Davis. Defendant expresses outrage
that the plaintiff has not mentioned Davis' use of these racial
slurs when filing his seven EEO Complaints, in previous
affidavits, or in a letter.[5] Earlier in this case plaintiff

---

[5] There appears to be a dispute of fact as to whether
plaintiff testified during administrative hearings that Davis
used this alleged racial slur. Defendant's counsel indicated
that she is in the process of having the transcripts of certain
hearings transcribed and would provide them to the court if they
are deemed by the court as necessary. At this time, the court
sees no need to review these transcripts or resolve the disputed
factual issue concerning the substance of plaintiff's testimony
at these hearings. Even if defendant was able to demonstrate
that plaintiff failed to allege the use of racial slurs in
previous administrative hearings, under the circumstances present
in this case the court sees no basis for treating such omission
during administrative proceedings as a bar to such evidence in
the plaintiff's pending court action.

testified in his affidavit that he had been called a "Nigger" but failed to state who communicated the racial slur or the circumstances surrounding the slur. See April 22, 1996 Affidavit in Opposition to Defendant's Motion for Partial Summary Judgment at ¶ 5.

Defendant argues that due to the inconsistencies with former testimony and the belated disclosure by plaintiff of these racial slurs the court should disregard plaintiff's deposition testimony regarding Davis' slurs. However, the court is not persuaded that defendant has presented any sufficient basis for precluding the evidence.

Although this case has been pending since January 16, 1996, plaintiff was not deposed until June 10, 1998.[6] The first documented attempt by defendant's counsel to schedule plaintiff's deposition for April of 1998 was by a letter dated March 23, 1998. Defendant was only able to firmly schedule the deposition after the court granted defendant's April 15, 1998 motion to compel plaintiff's deposition on June 10, 1998. While the plaintiff's stonewalling and refusal to voluntarily agree to a time for the deposition resulted in an unnecessary two-month delay in obtaining plaintiff's testimony, prior to that time

---

[6] Upon the joint motion of the parties, this case was stayed during the appeal from November 14, 1996 until November 17, 1997. See November 14, 1996 Order; November 17, 1997 Order. Parties were given from November 17, 1997 until May 1, 1998 to conduct any additional discovery required to gain necessary information not obtained during the initial discovery period of five months prior to the appeal.

defendant had allowed to elapse an initial five-month discovery period as well as an additional four-month discovery period following the appeal and lifting of the stay before even attempting to depose plaintiff.

Plaintiff asserts that the repeated racial slurs by Davis serve as direct evidence of discrimination. Defendant points to the Eleventh Circuit's restrictive view of direct evidence and asserts that Davis's racial slurs fail to meet the definition of direct evidence.

> We have defined direct evidence as "'evidence, which if believed, proves existence of fact in issue without inference or presumption.'" Merritt v. Dillard Paper Co., 120 F.3d 1181, 1189 (11th Cir. 1997), quoting Rollins v. TechSouth Inc., 833 F.2d 1525, 1528, n.6 911th Cir. 1987). "[D]irect evidence relates to actions or statements of an employer reflecting a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Caban-Wheeler v. Elsea, 904 F.2d 1549, 1555 (11th Cir. 1990).

Carter v. Three Springs Residential Treatment, 132 F.3d 635, 641-42 (11th Cir. 1998). Insufficient facts are before the court to resolve the issue of whether the slurs, if made, constitute direct evidence that the employment decision was racially motivated. If the slurs were made and satisfy the requirements for direct evidence of a discriminatory animus by a person involved in the challenged decision, summary judgment would not be appropriate.

Even if the court were to conclude that the slurs do not constitute direct evidence, plaintiff could still use the statements as circumstantial evidence to persuade a jury to disbelieve defendant's proffered reasons for his termination.

8

Ross v. Rhodes Furniture, Inc., 146 F.3d 1286 (11th Cir. 1998). Thus, evidence that such statements were made, even if not treated by this court as direct evidence, appears sufficient to create a material factual dispute as to the true reason for plaintiff's removal from Federal service. Under the totality of the circumstances, defendant's motion for summary judgment is due to be denied as to plaintiff's race discrimination claim concerning his termination.

### C. Title VII - Retaliation Claim

Next, defendant asserts that he is entitled to summary judgment in his favor because plaintiff has failed to present sufficient evidence that the proffered reasons for the adverse employment actions relating to plaintiff were pretextual for a retaliatory motive. In order for plaintiff to establish a prima facie case of retaliation under Title VII, he must present evidence: (1) that there was a statutorily protected participation; (2) that an adverse employment action occurred; and (3) that there was a causal link between the participation and the adverse employment action. Fleming v. Boeing Co., 120 F.3d 242, 248 (11th Cir. 1997). In his brief, plaintiff describes his "protected participation" as his involvement with an August 5, 1991 EEO complaint that resulted in a favorable decision to plaintiff in January of 1993. See Ex. 7 to Plaintiff's depo. There is no dispute that plaintiff's filing and pursuit of the August 5, 1991 EEO complaint provides protected participation and his removal from Federal service

constitutes an adverse employment action. However, there appears to be insufficient evidence of a causal link between the two events.

In order to withstand summary judgment, plaintiff must at least be able to prove that the protected activity and the negative employment action are not completely unrelated. E.E.O.C. v. Reichhold Chemicals, Inc., 988 F.2d 1564, 1571-72 (11th Cir. 1993). Plaintiff has failed to present sufficient evidence showing that the protected activity and the negative employment action are related. The simple fact that plaintiff obtained a favorable ruling on his August 5, 1991 EEO charge approximately two months before the decision in March 1993 which led to his August 25, 1993 removal is insufficient in and of itself (and this is all that plaintiff has come forward with) to carry plaintiff's burden of providing evidence of a causal link. See Exhibit 7 to Plaintiff's depo. Plaintiff's primary participation with the protected activity likely occurred closer to his time of filing the complaint in August of 1991, rather than any time around the rendering of the favorable decision in January of 1993. The January 1993 decision was prompted by plaintiff's request to the EEOC for a reopening and reconsideration of its June 22, 1992 decision filed on July 9, 19992, eight months before the March 1993 incident resulting in his removal from Federal service. Thus, this activity is too remote to provide sufficient evidence to solely create an issue of material fact as to the presence of a causal link.

Even assuming plaintiff has adequately presented a prima facie case of retaliation, including the causal link, defendant asserts that plaintiff's retaliation claim still falters due to the absence of a material factual dispute as to the truthfulness of the asserted non-discriminatory reasons for the employment actions and no additional evidence of a retaliatory motive of a decision maker. Once plaintiff has established his prima facie case, defendant must proffer a legitimate, non-discriminatory reason for the adverse employment action. Holifield v. Reno, 115 F.3d 1555, 1566 (11th Cir. 1997). Then plaintiff must produce evidence that the employer's proffered explanation is a pretext for retaliation. Holifield, 115 F.3d at 1566. Defendant asserts that it remains undisputed that: (1) plaintiff was away from his assigned work site on March 25, 1993 without permission; (2) plaintiff failed to respond to Davis' inquiry concerning plaintiff's whereabouts during the absence until several days later; and (3) plaintiff had been disciplined on two prior occasions.[7] See Plaintiff depo. 76, 110-12, 268-69; Transcript from November 23, 1993 Fact Finding Conference (Ex. to

---

[7] As defendant points out, the court's July 12, 1996 decision prevents plaintiff from challenging the substance of the two prior ATD agreements resulting from charges of plaintiff's misconduct. In this instance, the court is not considering the substance of the ATD agreements or whether any charges of misconduct by plaintiff were appropriate. Rather, the court is simply recognizing that defendant could rely on the undisputed fact that plaintiff had in fact been disciplined, by way of the ATD agreements, on two prior occasions, as a non-discriminatory reason for his removal from Federal service as opposed to a less severe sanction. Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984).

Plaintiff's Affidavit, p. 81, included in document 15 of the record); Chapman Declaration, Exhibits 4 & 5. Thus, defendant asserts that the undisputed evidence supports its proffered explanation that plaintiff was removed from Federal service due to unauthorized absence from the work site, discourtesy to his supervisor and a record of prior disciplinary actions.

Plaintiff has presented no evidence that the proffered reasons for his removal from Federal service serve as a pretext for retaliation for his participation in protected EEO activities. As noted above, the simple timing of the favorable EEOC decision in January of 1993 is insufficient to create an issue of fact in the face of defendant's supported and unchallenged non-discriminatory reasons. Thus, defendant's motion for summary judgment is due to be granted as to plaintiff's retaliation claim.[8] A separate order will be entered.

DONE this 25th day of August, 1998.

*[signature]*
SENIOR UNITED STATES DISTRICT JUDGE

---

[8] While the defendant proffers the same legitimate, non-discriminatory reasons for removing plaintiff from Federal service in relation to both his race discrimination and retaliation claim, the court's acceptance of this evidence in the retaliation claim in no way prejudices plaintiff's racial discrimination claim. The difference in the court's ruling between plaintiff's race discrimination and retaliation claims exists because of a difference in the evidence presented by plaintiff to prove an illegal animus or pretext, not its acceptance of defendant's evidence in one claim as sufficient and in the second claim as insufficient.